**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CASEY JURGELEVICIUS, on behalf of       )
herself and others similarly situated       )       Civil Action No.
                                                             )
                    Plaintiffs,                      )       **COLLECTIVE AND CLASS ACTION**
                                                             )       **COMPLAINT AND DEMAND**
         v.                                              )       **FOR JURY TRIAL**
                                                             )
PINE TAVERN, INC., individually;        )
CLAGS INC. d/b/a PINE TAVERN; LUIGI  )
BONGIOVI, individually; GIUSEPPE    )
BONGIOVI, individually                     )
                                                             )
                    Defendants.                    )

Plaintiff Casey Jurgelevicius on behalf of herself and others similarly situated, brings this class and collective action for violations of state and federal wage and hour laws against Defendants Pine Tavern, Inc., Clags Inc. d/b/a Pine Tavern (collectively, "Pine Tavern"), and Luigi Bongiovi, individually ("Luigi") (collectively, the "Wage Defendants").  Plaintiff, Casey Jurgelevicius, individually, also brings causes of action for wrongful termination and sexual harassment in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq.* ("NJLAD") against Pine Tavern, Luigi, and Giuseppe Bongiovi, individually ("Giuseppe") (collectively, the "Harassment Defendants").  Plaintiff alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.         Plaintiff on behalf of herself and others similarly situated brings this collective and class action against the Wage Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56A, *et seq.* and the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4, *et seq.*

2.     The putative class and persons similarly situated to Plaintiff include all tipped employees such as servers and bartenders employed by the Wage Defendants since February 1, 2018.

3.     Upon information and belief, the Wage Defendants engaged in a policy or practice requiring Plaintiff and members of the putative class and similarly situated persons to surrender a percentage of rightfully earned tips to the Pine Tavern in violation of applicable federal and state law and to not pay tipped employees the New Jersey minimum wage.

4.     Plaintiff individually also brings this lawsuit against the Harassment Defendants.

5.     Giuseppe, who supervised Plaintiff, engaged in sexually harassing conduct against Plaintiff both inside and outside of the workplace in violation of NJLAD.

6.     Luigi, who is an owner of the Pine Tavern and supervised Plaintiff and Giuseppe, knew about Giuseppe's sexual harassment of Plaintiff and aided and abetted said sexual harassment of Plaintiff by not stopping the harassment and firing Plaintiff for refusing to have a romantic relationship with Giuseppe.

## JURISDICTION

7.     Supplemental jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and § 1337 and by 29 U.S.C. § 216 by way of Plaintiff's federal law claims stemming from FLSA.

8.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1332 and § 1367 by way of Plaintiff's and the putative class of similarly situated persons' state law claims stemming from NJWHL, NJLD and NJWPL violations.

9.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) and (c) in that the unlawful actions complained of occurred in and the records relevant to such practices are maintained in this District.

## PARTIES

10.    Plaintiff, who is nineteen (19) years old, was at all relevant times herein, a resident of the State of New Jersey.

11.    Plaintiff was employed as a part-time waitress by Pine Tavern from July 5, 2020 to January 11, 2021.

12.    The Pine Tavern is a restaurant operating at 151 NJ-34 in Matawan, New Jersey 07747.

13.    Upon information and belief, Luigi was at all relevant times an owner of the Pine Tavern, an operator of the Pine Tavern's day-to-day business including payroll practices and a supervisor of Giuseppe and Plaintiff.

14.    Giuseppe, who is twenty-six (26) years old, was at all relevant times a manager at the Pine Tavern and Plaintiff's direct supervisor.

15.    At all times relevant to this action, the Wage Defendants were and/or are employers of all persons similarly situated  to Plaintiff.

## STATEMENT OF FACTS

**Facts Pertaining to Plaintiff's Individual Claims Sounding in Sexual Harassment Against the Harassment Defendants**

16.    Throughout Plaintiff's employment, Giuseppe repeatedly made romantic advances to Plaintiff including sending her provocative text messages and begging her to go on dates with him.

17.    Giuseppe pressured Plaintiff to date him by making it clear to her that if she continued to refuse his advances,  she would be fired from Pine Tavern.

18.    Plaintiff, who during all relevant times was a college student and relied upon compensation from the Pine Tavern to pay tuition, feared for her job (particularly due to the

pandemic virtually eliminating any viable employment alternative) causing her to reluctantly go on a few breakfast and lunch dates with Giuseppe.

19.    Casual day dating was not enough for Giuseppe, and he pressured Plaintiff to begin an exclusive relationship with him.

20.    Plaintiff repeatedly told Giuseppe both verbally and in writing that she did not reciprocate his feelings, did not desire to have any romantic relationship with him and wanted to continue to work at Pine Tavern.

21.    In response, Giuseppe made it clear that he would have Plaintiff's job terminated unless she agreed to an exclusive romantic relationship.

22.    Plaintiff was forced to date Giuseppe to keep her job.

23.    Giuseppe sexually harassed Plaintiff while she worked by following her around the Pine Tavern, staring at her, behaving in a possessive manner and asking her if he could help her use the restroom.

24.    Giuseppe would fabricate reasons to be in Plaintiff's presence and/or personal space while she worked including making up reasons to communicate with Plaintiff under the guise of Pine Tavern-related matters, but such communications frequently became schemes to make intimate advances.

25.    The foregoing conduct caused Plaintiff severe emotional distress including loss of sleep and anxiety about having to be around and communicate with Giuseppe.

26.    Plaintiff considered Giuseppe's behavior to be obsessive, and it scared her.

27.    Giuseppe's conduct also made Plaintiff's relationship with some coworkers uncomfortable because they would complain to her about Giuseppe's sometimes  "creepy" behavior toward or about her in the workplace.

28.     Giuseppe's sexual advances towards Plaintiff and the fact that they were not reciprocated was well known at the Pine Tavern including by Manager Joanne Cichorz ("Joanne").

29.     On or around January 10, 2021, Joanne asked Plaintiff whether she wanted to quit her employment with Pine Tavern due to Giuseppe's repeated sexual advances and general refusal to take "no" for an answer.

30.     Joanne told Plaintiff that it would be "easier" on her if she simply quit.

31.     Plaintiff refused to quit telling Joanne that she desperately needed the job to pay for college.

32.     At the end of Plaintiff's shift following that conversation, Plaintiff received a flood of text messages from Giuseppe stating that he missed her and desperately wanted her to agree to see him outside of work.

33.     Plaintiff responded to those text messages by again rejecting Giuseppe's advances.

34.     Giuseppe responded by threatening Plaintiff telling her that she should consider ending her time working for the Pine Tavern.

35.     Plaintiff refused to quit and told Giuseppe that she needed to continue working to support herself through college.

36.     The next day, on January 11, 2021, Luigi sent Plaintiff a text message in which he expressly told Plaintiff that he had terminated her employment due to her refusal to have a romantic relationship with his brother/restaurant manager Giuseppe.  A true and correct copy of Luigi's text message is attached hereto as Exhibit "A."

37.     During all relevant times, Luigi and Giuseppe had the power and authority to make and enforce personnel decisions at the Pine Tavern, which included, but were not limited to, control over scheduling employees, determining what tables were sat in which employee's section, management of day-to-day operations, instituting and enforcing anti-harassment policies, and control over the payment of wages, the pooling of tips, and the retention of tips.

38.     Luigi and Giuseppe had the power and authority to hire and fire employees and otherwise control Plaintiff's terms and conditions of employment.

39.     The Pine Tavern never provided Plaintiff with an Employee Manual or any policy pertaining to anti-harassment or how to report a complaint of sexual harassment in the workplace.

40.     The Pine Tavern failed to display any New Jersey Department of Labor postings pertaining to employee rights in the workplace.

41.     Throughout Plaintiff's employment at the Pine Tavern, Plaintiff earned tips, on average in the amount of $250.00 per shift.

42.     From July 5, 2020 through January 11, 2021, Plaintiff worked an average of three (3) shifts per week which was approximately twenty-five (25) hours per week.

43.     As a result of the Harassment Defendants' termination of Plaintiff's employment, Plaintiff sustained a significant loss of compensation, as well as, considerable emotional distress which includes the manifestation of physical illness directly attributable to the actions or inactions of the Harassment Defendants.

**Facts Pertaining to Plaintiff's and Other Similarly Situated Persons'
Collective and Class Claims Against the Wage Defendants**

44.     This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) and as a class action pursuant to Rule 23.

45.     Upon information and belief, at any given time during the pandemic, the Pine Tavern, generally employed at least fifteen (15) servers and bartenders, who received tips from customers.

46.     Upon information and belief, at any given time prior to the pandemic, the Pine Tavern, generally employed at least twenty-five (25) servers and bartenders, who received tips from customers.

47.     In 2020, the Wage Defendants paid Plaintiff and other similarly situated employees an hourly rate of $3.13.

48.     In 2021, the Wage Defendants paid Plaintiff and other similarly situated employees an hourly rate of $4.13.

49.     At the end of each shift, the Wage Defendants required Plaintiff and other similarly situated employees to pay the "House" a percentage of their tips ranging from four to six percent (4% – 6%) of the total amount of sales the employee made during his or her shift (the "House Payment").

50.     The percentage of the House Payment varied from shift to shift and no reason was ever provided for the variation.

51.     Plaintiff and other similarly situated employees were directed to calculate the House Payment on their phones and to hand the cash House Payment to the manager on duty.

52.     Plaintiff and, upon information and belief, other tipped employees saw Luigi, Giuseppe and Joanne put the House Payment into the cash register.

53.     The Wage Defendants never told Plaintiff and, upon information and belief, other similarly situated employees the purpose of the House Payment or how or where the House Payment was used.

54. On occasion and without any formal procedure, policy, or notice, the Wage Defendants required Plaintiff and other similarly situated employees to pool their tips.

55. Sometimes on shifts when Plaintiff was required to pool her tips, the Wage Defendants told her, and upon information and belief the other tipped employees, that she had to include the Manager Joanne among the persons sharing the tips.

56. Sometimes Plaintiff, and upon information and belief, the other tipped employees, were told that they had to include the House as an entity in the division of the tips.

57. Plaintiff, and upon information and belief the other tipped employees, never saw or heard from any busser or other employee who was eligible for tips, that the House gave any of the pooled tips to them.

58. Plaintiff was told by the bussers that they never received any of the tips paid to the House.

59. Plaintiff, and upon information and belief, the other tipped employees saw Luigi, Giuseppe and Joanne put the House's portion of the money from the tip pool into the cash register.

60. The Wage Defendants never displayed at  the Pine Tavern any Department of Labor poster or other documentation addressing the wage and hour rights of tipped employees.

61. The Wage Defendants never provided Plaintiff or upon information and belief the other similarly situated employees with any written policy or explanation as to the wage and hour rights of tipped employees, how or whether the Pine Tavern operated a tip pool, and whether the Pine Tavern took a tip credit for tax purposes for each tipped employee.

62. Upon information and belief, the Wage Defendants retained a portion of the tips earned by Plaintiff and other similarly situated employees.

63.     Upon information and belief, the Wage Defendants gave a portion of the tips earned by Plaintiff and other similarly situated employees to non-tipped employees.

64.     The Wage Defendants utilized a tip credit for each hour worked by Plaintiff and other similarly situated employees.

65.     The Wage Defendants never informed Plaintiff or upon information and belief the other similarly situated employee about the tip credit allowance.

66.     The Wage Defendants did not pay Plaintiff and other similarly situated employees the statutory minimum wage for the time worked prior to the Pine Tavern opening for customers.

67.     The Wage Defendants did not pay Plaintiff or other similarly situated employees at least the statutory minimum wage for every hour worked when direct wages and tips are added together.

68.     The Wage Defendants took the tip credit despite the fact that the Wage Defendants received part of Plaintiff's and other similarly situated employee's tips.

69.     Upon information and belief, during all times relevant to this Complaint, the Wage Defendants failed to keep full and accurate records of Plaintiff's and similarly situated employees' hours and wages.

70.     This action is brought on behalf of Plaintiff, as well as, a putative class and collective consisting of similarly situated employees who work or worked for the Wage Defendants during the last three (3) or more years as hourly, non-exempt employees who were denied minimum wages by the Wage Defendants by way of a claimed tip credit, retention or taking of employee tips, and failure to notify employees of their rights afforded to them under the FLSA, NJWHL and NJWPL.

71.     The members of the class are so numerous that joinder of all members is impracticable.

72.     The claims of Plaintiff against the Wage Defendants are common to the putative class in that they were improperly denied the mandatory minimum wage, are entitled to compensation for wrongfully taken tips, and are entitled to compensatory and liquidated damages.

73.     Plaintiff is committed to pursuing this litigation against the Wage Defendants and retained competent counsel who is experienced in class and collective action litigation; Plaintiff's counsel will fairly and adequately protect the interests of the putative class and collective.

74.     A class and collective action is superior to all other available methods for fair and efficient adjudication of this litigation. Plaintiff and the putative class individually lack the financial resources to adequately prosecute separate lawsuits against the Wage Defendants.

75.     The prosecution of separate actions by individual members of the putative class would create an undue risk of inconsistent and/or varying adjudication with respect to the individuals in such a class.

76.     A class and collective action is the superior method of adjudication because individual joinder of parties is impractical and because the expenses and burden of individual litigation would make adjudication of individual claims difficult.

## COUNT I

### SEXUAL HARASSMENT AND WRONGFUL TERMINATION
### IN VIOLATION OF NJLAD
### AGAINST THE HARASSMENT DEFENDANTS

77.     Plaintiff hereby repeats and realleges paragraphs 1 through 76, as though fully set forth herein.

78.     Plaintiff was the victim of a continuous campaign of sexual harassment by Giuseppe at the Pine Tavern.

79.     The sexual harassment by Giuseppe toward Plaintiff was severe and pervasive.

80.     Plaintiff made it clear to Giuseppe that the sexual comments and acts directed at her were unwelcome and rejected his advances several times throughout her employment.

81.     Upon information and belief, it was commonly known by Luigi, Joanne and other employees at the Pine Tavern that Giuseppe made a number of statements and committed various acts directed at Plaintiff that were of a sexual nature and that such statements and acts were unwelcome and offensive to Plaintiff.

82.     Luigi never took any action to counsel or discipline Giuseppe for his sexual harassment and pursuit of Plaintiff, who during and throughout the relevant time was a subordinate employee.

83.     Joanne never took any action to counsel or discipline Giuseppe for his sexual harassment and pursuit of Plaintiff, who during and throughout the relevant time was a subordinate employee.

84.     Despite other managers of Pine Tavern knowing and acknowledging the existence of Giuseppe's unwanted sexual advances toward Plaintiff, neither Luigi nor Joanne took any actions to correct or remedy the situation.

85.     Giuseppe abused his power as a manager of the Pine Tavern and Plaintiff's supervisor to carry out his acts of sexual harassment against Plaintiff.

86.     Plaintiff endured severe and pervasive harassment during and throughout her employment at the Pine Tavern.

87.     Plaintiff was forced to endure sexual harassment as a term and condition of her employment.

88.     The sexually harassing actions and statements directed at Plaintiff by Giuseppe and condoned by Luigi and Joanne affected the terms and conditions of Plaintiff's employment and created an intimidating, hostile, offensive and abusive working environment.

89.     A reasonable person would consider the actions and statements directed toward Plaintiff to have created an intimidating, hostile, offensive and abusive working environment.

90.     By regularly subjecting Plaintiff to harassment over an extended period of time, the Harassment Defendants caused Plaintiff to suffer profound emotional distress, resulting in physical manifestations.

91.     The Harassment Defendants knew or should have known that these actions and statements would and or did cause severe emotional distress to Plaintiff.

92.     Upon information and belief, the Pine Tavern had no written policy prohibiting sexual harassment in the workplace.

93.     Luigi and Giuseppe aided and abetted the commission of sexual harassment against Plaintiff at the Pine Tavern.

94.     The Pine Tavern is negligent in failing to have or to maintain an effective and well-publicized structure for handling and responding to complaints of sexual harassment.

95.     The Harassment Defendants wrongfully and illegally terminated Plaintiff's employment for refusing to accept Giuseppe's sexual advances and complaining about sexual harassment.

96.     The Harassment Defendants acted with willful indifference to and reckless disregard for Plaintiff.

**WHEREFORE**, Plaintiff demands judgment in her favor and against the Harassment Defendants, jointly and severally, for violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. Sec. 10:5-1 *et seq*., and requests the following relief:

(a) Order that the Harassment Defendants make Plaintiff whole for all losses she suffered, still suffers, and will suffer in terms of wage loss, including back pay plus interest and front pay, any other benefits of her employment;

(b) Award Plaintiff compensatory damages for her injuries, including emotional distress suffered as a result of sexual harassment in violation of NJLAD;

(c) Award Plaintiff punitive damages on the grounds of Giuseppe's and Luigi's active participation in and willful indifference to sexual harassment against Plaintiff and the failure to have any policy in place to advise employees of their right to a harassment free workplace and failure to advise employees how to report sexual harassment in the workplace;

(d) Award Plaintiff attorneys fees and costs of suit by the need to bring this litigation; and,

(e) Grant Plaintiff such relief as the Court deems equitable and just.

## COUNT II

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF NJLAD AGAINST THE HARASSMENT DEFENDANTS

97.     Plaintiff's allegations contained in Paragraphs 1 through 96 above are incorporated herein as if set forth in their entirety.

98.     Luigi, Giuseppe and Joanne knew or reasonably should have known that Giuseppe's sexual advances towards Plaintiff were unwanted, ongoing, and harassing.

99.     Plaintiff complained about such harassment to Joanne, but nothing was done to correct the situation and instead Joanne recommended Plaintiff quit her job.

100.    The Harassment Defendants' and Joanne's inaction negatively impacted the shifts Plaintiff was able to work, as well as, forced Plaintiff to avoid Giuseppe at work in an attempt to remedy the situation.

101.    The sexual harassment in which Plaintiff endured by the Harassment Defendants was sufficiently severe and pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

102.    As a direct and proximate result of the Harassment Defendants' and Joanne's actions and inactions, Plaintiff suffered and will continue to suffer significant damage, including, but not limited to, loss of income, wages, salaries, benefits, and a diminished capacity to secure similar employment.

103.    Plaintiff suffered and will continue to suffer from humiliation, emotional distress, physical manifestation of injuries or illness related to emotional distress, anxiety and anguish.

104.    Luigi, Giuseppe and Joanne aided and abetted in the creation of a hostile work environment based on unwanted sexual advances in the workplace.

105.    The Harassment Defendants' termination of Plaintiff's employment was willful, wanton and malicious and with the intent to deprive her of the benefits of her past, present, and prospective employment, including wages, tips, and other remuneration, and with the intent to cause harm in violation of the laws of the State of New Jersey, thereby warranting punitive damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against the Harassment Defendants, jointly and severally, for violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. Sec. 10:5-1 *et seq*. and requests the following relief:

(a) Order that the Harassment Defendants make Plaintiff whole for all losses she has suffered, still suffers, and will suffer in terms of wage loss, including back pay plus interest and front pay and any other benefits of her employment and service;

(b) Award Plaintiff compensatory damages for her injuries, including emotional distress suffered as a result of the Harassment Defendants' termination of her employment due to a hostile work environment in violation of NJLAD;

(c) Award Plaintiff punitive damages on the grounds of upper management's active participation in and or willful indifference to the termination of Plaintiff's employment;

(d) Award Plaintiff attorneys' fees and costs of suit, and interests incurred by the need to bring this litigation; and,

(e) Grant Plaintiff such relief as the Court deems equitable and just.

### COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE HARASSMENT DEFENDANTS

106.    Plaintiff's allegations contained in Paragraphs 1 through 105 above are incorporated herein as if set forth in their entirety.

107.    The above-described acts of harassment and retaliation by the Harassment Defendants comprise conduct against Plaintiff that was extreme, outrageous, atrocious, and utterly intolerable, which went beyond all possible bounds of decency and which should not have to be and cannot properly be tolerated by any member of civilized society.

108.    The Harassment Defendants acted intentionally in carrying out the extreme and outrageous acts and causing resultant emotional distress to Plaintiff which manifested in physical injury.

109.    The conduct by the Harassment Defendant was sufficiently severe to cause genuine and substantial emotional distress or mental harm to average persons who were similarly situated.

110.    As a direct and proximate result of the Harassment Defendants' intentional infliction of emotional distress, Plaintiff sustained damages, and will, in the future continue to sustain damages.

111.    The extreme and outrageous acts by the Harassment Defendants were malicious, willful and wanton, and justify an award of punitive damages.

112.    The Harassment Defendants ratified and acquiesced in all of the above-described illegal, extreme, outrageous and malicious acts committed by individual supervisory and management employees.

113.    The extreme and outrageous mistreatment of Plaintiff, though quantifiable in part now and in the future, is ongoing, thus causing her irreparable harm.

**WHEREFORE**, Plaintiff demands judgment, jointly and severally, for:

(a) Compensatory damages;

(b) Punitive damages;

(c) Costs, interest and attorneys' fees; and,

(d) Such other relief as the Court may deem fair and equitable.

### COUNT IV

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### AGAINST THE WAGE DEFENDANTS

114.    Plaintiff and others similarly situated hereby repeat and reallege paragraphs 1 through 113, as though fully set forth herein.

115.    Plaintiff and others similarly situated were, during the relevant time, and otherwise are "employees" within the meaning of the FLSA.

116.    The Wage Defendants were, during the relevant time, and otherwise are "employers" within the meaning of the FLSA.

117.    The FLSA forbids any arrangement whereby an employer or supervisor can retain any part of employee tips.

118.    The Wage Defendants improperly took a tip credit against Plaintiff's and other similarly situated employee's wages but failed to comply with the federal requirements for taking a tip credit, in that the Wage Defendants: (1) retained a portion of Plaintiff's tips for the Pine Tavern, (2) failed to provide the requisite detailed notice informing Plaintiff of the tip credit, and (3) improperly required tipped employees to share tips with other employees, who were not working primarily for tips, as well as, the Pine Tavern itself.

119.    The Wage Defendants' tipping arrangement was and remains illegal in that the Wage Defendants forfeited the restaurant's use of a tip credit by way of the above actions.

120.    As a result of the Wage Defendants' improper and illegal actions, Plaintiff and others similarly situated should have been paid the full minimum wage for all hours worked and should be reimbursed for the tips the Wage Defendants wrongfully and improperly retained or took as part of an illegitimate tip pool and or the House Payments.

121.    Due to the Wage Defendants' improper tipping arrangement and use of the tip credit, the Wage Defendants violated the FLSA's minimum wage mandate by paying tipped employees an hourly wage of less than $11.00 in 2020 and $12.00 in 2021.

122.   The Wage Defendants acted willfully and with reckless disregard towards Plaintiff and others similarly situated as well as continue to violate Plaintiff's rights by failing to pay minimum wage for all hours worked.

123.   The Wage Defendants willfully violated and continue to willfully violate FLSA by failing to post notices of employees' right to receive the minimum wage and to retain their tips.

124.   As a direct consequence of the Wage Defendants' violations of the FLSA, Plaintiff and others similarly situated suffered and will continue to suffer substantial injury and harm.

**WHEREFORE**, Plaintiff and others similarly situated demand judgment in their favor against the Wage Defendants for violation of the Fair Labor Standards Act, 29 U.S.C. § 203, *et seq*., and request the following relief:

(a) An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

(b) An Order from this Court ordering the Wage Defendants to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all employees who have worked for the Pine Tavern during the preceding three (3) years as a server and or bartender, and/or in positions with similar job duties, and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked for the Pine Tavern during the liability period, but were not paid minimum wages and or their tips were wrongfully taken by the Wage Defendants;

(c) Adjudicating and declaring that the Wage Defendants' conduct as set forth herein and above is in violation of the FLSA;

(d) Adjudicating and declaring that the Wage Defendants violated the FLSA by failing to pay minimum wages to Plaintiff and others similarly situated;

(e) Adjudicating and declaring that the Wage Defendants violated the FLSA by wrongfully taking and retaining Plaintiff's and other similarly situated employee's tips via an invalid tip pool and or the House Payments;

(f) Awarding Plaintiff and others similarly situated such minimum wages and reimbursement of tips as are due and owing in an amount consistent with the FLSA;

(g) Awarding Plaintiff and others similarly situated liquidated damages in accordance with the FLSA;

(h) Awarding Plaintiff's reasonable attorneys' fees and all costs of this action, to be paid by the Wage Defendant, in accordance with the FLSA;

(i) Awarding pre- and post-judgment interest and court costs as further allowed by law;

(j) Granting Plaintiff and others similarly situated leave to add additional Plaintiffs by motion, the filing of written opt-in consent forms, or any other method approved by the Court; and

(k) For all additional general and equitable relief to which Plaintiff and others similarly situated may be entitled.

## COUNT V

## VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW AGAINST THE WAGE DEFENDANTS

125.   Plaintiff and Class Plaintiffs hereby repeat and reallege paragraphs 1 through 124 as though fully set forth herein.

126.   Plaintiff and Class Plaintiffs were, during the relevant time, and otherwise are "employees" within the meaning of the NJWHL.

127.   The Wage Defendants were, during the relevant time, and otherwise are "employers" within the meaning of the NJWHL.

128.   The Wage Defendants violated and continue to violate the rights of Plaintiff and Class Plaintiffs by failing to pay minimum wage, wrongfully taking a tip credit, and improperly

taking Plaintiff's tips via a tip pool shared with a manager and the House and taking the House Payment.

129.    The Wage Defendants violated and continue to violate the rights of Plaintiff and Class Plaintiffs by willfully diverting tips due and owed to Plaintiff and Class Plaintiffs in violation of N.J.S.A. § 34:11-4.14(a).

130.    The Wage Defendants' willful violations of applicable New Jersey labor law provisions entitle Plaintiff and Class Plaintiffs to such unpaid wages and diverted tips in accordance with N.J.S.A. § 34:11-4.14(b).

131.    The Wage Defendants acted willfully, intentionally, and with reckless disregard of applicable NJWHL provisions and New Jersey law.

132.    The Wage Defendants violated and continue to violate NJWHL by failing to keep full and accurate records of hours and wages of Plaintiff and Class Plaintiffs.

133.    The Wage Defendants willfully violated and continue to willfully violate NJWHL by failing to post notices of employees' right to receive the minimum wage, as well as, other employee rights in which the Wage Defendants violated and continue to violate.

134.    As a direct consequence of the Wage Defendants' violations of the NJWHL, Plaintiff and Class Plaintiffs suffered and continue to suffer substantial injury and harm.

**WHEREFORE**, Plaintiff demands judgment in favor of Plaintiff and Class Plaintiffs and against the Wage Defendants for violation of the NJWHL and requests the following relief:

(a)  Declaration that the Wage Defendants have violated state minimum wage laws by not paying Plaintiff and Class Plaintiffs a proper base wage during their employment;

(b)  Declaration that the Wage Defendants violated New Jersey state law prohibitions against diverting tips of Plaintiff and Class Plaintiffs;

(c)  Award Plaintiff and Class Plaintiffs unpaid minimum wages due under New Jersey law and an additional equal amount as liquidated damages

because of the Wage Defendants' willful failure to pay
minimum wages and diversion of tips, pursuant to N.J.S.A. § 34:11-
4.14(b).

(d)   Award compensatory damages to Plaintiff and Class Plaintiffs in an
amount to be determined at trial;

(e)   Award punitive damages to Plaintiff and Class Plaintiffs in an amount
to be determined at trial;

(f)   Order Wage Defendants to pay reasonable attorneys' fees and costs
under federal and state law; and

(g)   Grant such other and further relief as this Court deems just and proper
under the circumstances.

## COUNT VI

### VIOLATIONS OF NEW JERSEY WAGE PAYMENT LAW
### AGAINST THE WAGE DEFENDANTS

135.   Plaintiff and Class Plaintiffs hereby repeat and reallege paragraphs 1 through 134, as though fully set forth herein.

136.   Plaintiff and Class Plaintiffs were, during the relevant time, and otherwise are "employees" within the meaning of applicable New Jersey law.

137.   The Wage Defendants were, during the relevant time, and otherwise are "employers" within the meaning of applicable New Jersey law.

138.   The Wage Defendants had and currently have an obligation to provide all employees, including Plaintiff and Class Plaintiffs, with a statement of deductions, to maintain wage and hour records, and to preserve such wage and hour records in accordance with N.J.S.A. § 34:11-4.6.

139.   The Wage Defendants violated and continue to violate N.J.S.A. § 34:11-4.6 by failing to inform Plaintiff and Class Plaintiffs of such information, as well as, failing to properly maintain and preserve all applicable wage and hour records.

140.    During and throughout the relevant time, the Wage Defendants failed to provide Plaintiff and Class Plaintiffs with proper statements of deductions, wages, and hours as required by N.J.S.A. § 34:11-4.6.

141.    During and throughout the relevant time, the Wage Defendants failed to post notices required by the NJWPL at the Pine Tavern as required by N.J.S.A. § 34:11-4.6.

142.    During and throughout the relevant time, the Wage Defendants failed to notify Plaintiff and Class Plaintiffs of changes in pay rates such as varying the percentage of sales taken from tips at the end of each shift in violation of N.J.S.A. § 34:11-4.6.

143.    During and throughout the relevant time, the Wage Defendants violated the NJWPL by wrongfully taking Plaintiff's and Class Plaintiffs' tips N.J.S.A. § 34:11-4.4.

**WHEREFORE**, Plaintiff demands judgment in favor of Plaintiff and Class Plaintiffs and against Wage Defendants for violation of the New Jersey Wage Payment Laws, N.J.S.A. § 34:11-4.6, and requests the following relief:

(a) Compensatory and Punitive damages to which Plaintiff is entitled pursuant to N.J.S.A. § 34:11-4.6;

(b) Pre-Judgment and Post Judgment Interest;

(c) Attorney's Fees, disbursements and costs of suit, and

(d) Any other relief that the Court deems just and proper

**JURY TRIAL**

144.    Plaintiff and similarly situated employees demand a jury trial.

Respectfully submitted,

**HILL WALLACK LLP**


By:  _/s/ Susan L. Swatski_
     Susan L. Swatski, Esq.
Dated:  February 1, 2021                Attorneys for Named Plaintiff and
                                        the Putative Class
                                        **HILL WALLACK LLP**
                                        21 Roszel Rd.
                                        Princeton, New Jersey 08543-5226
                                        (609) 924-0808
                                        Email:  sswatski@hillwallack.com
                                        Phone:  609-924-0808

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's causes of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, Instagram, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.